UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN RE VANDA PHARMACEUTICALS INC.
DERIVATIVE LITIGATION

Case No.: 1:19-cv-04293-FB-LB

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT**

**LEVI & KORSINSKY, LLP**
Gregory Mark Nespole
Daniel Tepper
55 Broadway, 10th Floor
New York, New York 10006
Tel: (212) 363-7500
gnespole@zlk.com
dtepper@zlk.com

*-and-*

**BRAGAR EAGEL & SQUIRE, P.C.**
W. Scott Holleman
Lawrence P. Eagel
Garam Choe
810 Seventh Avenue, Suite 620,
New York, New York 10019
Tel: (212) 355-4648
holleman@bespc.com
eagel@bespc.com
choe@bespc.com

*Co-Lead Counsel for Plaintiffs*

(Additional Counsel Listed on Signature Page)

Dated: July 19, 2021

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     OVERVIEW OF THE LITIGATION ................................................................. 2

    A.      The Derivative Action.............................................................................. 2

    B.      Settlement Efforts in the Derivative Litigation....................................... 4

III.    THE SETTLEMENT TERMS............................................................................ 4

    A.      Management Disclosure Committee......................................................... 5

    B.      Annual Policy Review .............................................................................. 6

IV.     ARGUMENT ...................................................................................................... 8

    A.      The Settlement Warrants Preliminary Approval...................................... 8

        1.      Standards for Preliminary Approval ............................................ 8

        2.      The Settlement Is Presumptively Fair Because It Resulted from Arm's-Length Negotiations by Experienced and Well-Informed Counsel ...................................................................................... 10

        3.      The Settlement Confers Valuable Benefits upon Vanda and Is Well Within the Range of Possible Final Approval ......................................... 14

    B.      The Notice Satisfies Rule 23.1(c) and Due Process ............................. 17

V.      PROPOSED SCHEDULE OF EVENTS....................................................... 19

VI.     CONCLUSION.................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................. 11

*Arace v. Thompson*,
   2011 U.S. Dist. LEXIS 93105 (S.D.N.Y. Aug. 17, 2011) ............................ 18

*Arbuthnot v. Pierson*,
   607 F. Appx. 73 (2d Cir. 2015) .................................................................. 11

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) .......................................................... 11

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979) ...................................................................... 17

*In re Caremark International Inc. Deriv. Litig.*,
   698 A.2d 959 (Del. Ch. 1996) .................................................................... 16

*City of Providence v. Aéropostale, Inc.*,
   2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) ............................... 11

*Clark v. Ecolab Inc.*,
   2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010) ............................. 11

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005) .................................................. 14, 15

*In re Currency Conversion Fee Antitrust Litig.*,
   2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006) .............................. 10

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ...................................................................... 10

*In re Drexel Burnham Lambert Group*,
   995 F. 2d 1138 (2d Cir. 1993) ................................................................... 19

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*,
   447 F. Supp. 2d 612 (E.D. La. 2006) ......................................................... 12

*In re Elan Sec. Litig.*,
   385 F. Supp. 2d 363 (S.D.N.Y. 2005) ........................................................ 11

*Grant v. Bethlehem Steel Corp.*,
   823 F.2d 20 (2d Cir. 1987) ........................................................................ 17

*In re Lloyd's Am. Trust Fund Litig.*,
  2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ..................... 16

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ..................................... 14

*Marsden v. Select Med. Corp.*,
  2005 U.S. Dist. LEXIS 714 (E.D. Pa. Jan. 18, 2005) .................. 18

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ..................................... 12

*In re Metro. Life Derivative Litig.*,
  935 F. Supp. 286 (S.D.N.Y. 1996) ............................ 11, 18

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) .............................................. 14

*Milstein v. Werner*,
  57 F.R.D. 515 (S.D.N.Y. 1972) ................................... 15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) .............................................. 17

*In re NASDAQ Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ................................... 10

*In re NeuStar, Inc. Sec. Litig.*,
  2015 U.S. Dist. LEXIS 165320 (E.D. Va. Dec. 8, 2015) ............. 12

*In re NVIDIA Corp. Derivative Litig*,
  2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009) ............ 14

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) .................................. 11

*In re Pfizer Inc. S'holder Derivative Litig.*,
  780 F. Supp. 2d 336 (S.D.N.Y. April 29, 2011) ................ 14, 16

*In re Prudential Sec. Inc. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) .................................. 9

*Republic Nat'l Life Ins. Co. v. Beasley*,
  73 F.R.D. 658 (S.D.N.Y. 1977) ................................... 8

*Schimmel v. Goldman*,
  57 F.R.D. 481 (S.D.N.Y. 1977) ................................... 8

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008).........................................................17

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)......................................................................................11

*Unite Nat'l Ret. Fund v. Watts*,
  2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 28, 2005).............................................................14

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)......................................................................................................10

*West Virginia v. Chas. Pfizer & Co.*,
  314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971)................................10

## Other Authorities

5 James Wm. Moore,
  *Moore's Federal Practice* 23.83[1] at 23-336.2 to 23-339 (3d ed. 2002)..................................9

Alba Conte & Herbert Newberg,
  *Newberg on Class Actions* §22.110 at 476 (4th ed. 2002).........................................................9

*Manual for Complex Litigation* (4th ed. 2004).......................................................................9, 10

## Rules

Fed. R. Civ. P. 23.1 ..............................................................................................................9, 17, 18

Plaintiffs Samuel Williams and Michael Bavaro ("Plaintiffs"), by and through their undersigned counsel ("Plaintiffs' Counsel"), respectfully submit this unopposed motion for preliminary approval of the proposed settlement of this shareholder derivative action (the "Derivative Action") brought on behalf of nominal defendant Vanda Pharmaceuticals Inc. ("Vanda" or the "Company") against certain of its current and former directors and officers (the "Individual Defendants").[1] All capitalized terms not defined herein shall have the same meaning as set forth in the Stipulation of Settlement dated July 19, 2021 ("Settlement" or "Stipulation"), which is attached as Exhibit 1 to the Declaration of Gregory Mark Nespole in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative Settlement, filed herewith.

## I.      INTRODUCTION

After extensive, arm's-length negotiations, the parties to the action have agreed to the Settlement, which fully resolves and settles the Settled Claims. The Settlement requires Vanda to maintain for a period of at least five (5) years a robust set of enhancements to the Company's corporate governance that will help prevent future damage to Vanda of the type alleged in this action (the "Reforms"). The Reforms will help to ensure timely and accurate public disclosures by the Company through enhancements to the duties and responsibilities of the Company's Disclosure Committee and training of the same; and improved internal controls by the institution of a comprehensive annual policy review undertaken by Vanda's General Counsel and Head of Compliance.

There is no question that the Settlement terms contemplated by the Stipulation provide a substantial benefit to the Company.  Furthermore, it is undisputed that the action (including the

---

[1] Plaintiffs provided Vanda and the Individual Defendants with a copy of the Motion and this Memorandum of Law prior to filing, and Defendants have informed Plaintiffs that they do not oppose the relief requested in the Motion.

commencement, litigation, and settlement thereof) was the primary cause of the Company's decision to implement and maintain the Reforms. Moreover, as detailed in Exhibit A to the Stipulation, the Reforms confer substantial benefits on the Company and its stockholders.

At the preliminary approval stage, the Court need only determine that the proposed Settlement is within the range of what might be found to be fair, reasonable, and adequate, such that notice of the Settlement should be provided to current Vanda shareholders and a hearing scheduled for consideration of final settlement approval. The proposed Settlement plainly meets this standard. In addition, the proposed schedule and notice are adequate to apprise shareholders of the Settlement's terms and to afford them a fair opportunity to submit objections, if any. Accordingly, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order[2] and: (i) preliminarily approve the Settlement set forth in the Stipulation; (ii) approve the form of the Notice of Pendency and Proposed Settlement of Derivative Action ("Notice"),[3] and direct that the Notice be published and posted in the time and manner described in the Stipulation; and (iii) schedule a hearing to consider final approval of the Settlement (the "Settlement Hearing"), as well as hearing objections, if any, by current Vanda shareholders.

## II.      OVERVIEW OF THE LITIGATION

### A.      The Derivative Action

On July 25, 2019, plaintiff Samuel Williams filed a shareholder derivative complaint in the United States District Court for the Eastern District of New York on behalf of Vanda against certain current and former directors and executives of Vanda for alleged breaches of fiduciary duties they allegedly owed to Vanda in connection with an alleged scheme to promote Vanda's two commercially available drugs, Fanapt® and Hetlioz®, for off-label uses (Case No. 1:19-cv-

---

[2] The Preliminary Approval Order is attached as Exhibit B to the Stipulation.
[3] The Notice is attached as Exhibit 1 to the Preliminary Approval Order.

04293-FB-LB) (the "Williams Action").

On September 9, 2019, plaintiff Michael Bavaro filed a shareholder derivative complaint in the United States District Court for District of Delaware on behalf of Vanda asserting claims against certain current and former directors and executives of Vanda similar to the claims asserted by plaintiff Williams, as well as claims relating to the clinical trials of tradipitant, a drug in Vanda's development pipeline (Case No. 1:19-cv-01701-CFC) (the "Bavaro Action").

On October 31, 2019, Defendants in the Bavaro Action filed a Motion to Transfer Case to United States District Court for The Eastern District of New York or, in the Alternative, to Stay Proceedings (the "Motion to Transfer"). The Motion to Transfer was fully briefed by the parties to the Bavaro Action and on February 18, 2020, the court in the Bavaro Action denied the Motion to Transfer but stayed the Bavaro Action pending the outcome of the Williams Action.

On March 27, 2020, the parties stipulated to transfer of the Bavaro Action to the United States District Court for the Eastern District of New York, where the parties would seek consolidation with the Williams Action.  The Bavaro Action was transferred to the United States District Court for the Eastern District of New York the same day.

On April 1, 2020, the Bavaro Action was consolidated with the Williams Action under the caption *In re Vanda Pharmaceuticals Inc. Derivative Litigation*, Case No. 1:19-cv-04293-FB-LB. On April 24, 2020, plaintiffs Williams and Bavaro filed a consolidated amended complaint (the "Consolidated Complaint") which asserted claims derivatively on behalf of Vanda for (i) breach of fiduciary duty; (ii) gross mismanagement; (iii) unjust enrichment; (iv) violations of section 10(b) of the Exchange Act and Rule 10b-5; and (v) violations of section 14(a) of the Exchange Act and Rule 14a-9, in connection with the alleged off-label promotion of Fanapt® and Hetlioz®, and the clinical trials of tradipitant.

### B.     Settlement Efforts in the Derivative Litigation

On November 9, 2020, the Court held a telephonic pre-motion conference.  The proposed motion pending before the Court was a motion to dismiss by the Defendants seeking dismissal of the Consolidated Complaint.  Following argument, the Court stated that it would be inclined to deny the proposed motion to dismiss contemplated by the Defendants and encouraged the parties to mediate the matter.  The parties, heeding the Court's guidance, did just that.

The parties engaged JAMS mediator Jed Melnick to see if they could reach a resolution to the consolidated action without further litigation.  The mediation was scheduled for February 22, 2021.  In anticipation of the mediation, Plaintiffs each provided Defendants with an extensive settlement demand and the Parties provided Mr. Melnick with comprehensive mediation statements.  After a full day of mediation, the Parties were able to make enough headway to continue settlement negotiations.

After two more months of negotiations, on April 28, 2021, the Parties were able to sign a term sheet outlining the substantive terms of the proposed settlement.  The Parties then turned to negotiating a fee for Plaintiffs' Counsel.  Following another two months of hard-fought negotiations, the Settling Parties were able to agree to a fee of $500,000 for Plaintiffs' Counsel (the "Fee Award") to be paid by the Company's insurer. The Settling Parties have agreed to settle the claims raised in the consolidated action pursuant to the terms and provisions of the Stipulation based on their belief that the terms of the Settlement are fair, reasonable, and adequate, and that it is in the best interests of the Company and its shareholders that the Company resolve the consolidated action on the terms presented in the Stipulation.

## III.    THE SETTLEMENT TERMS

The proposed Settlement is an excellent result, reached after extensive, arm's-length negotiations. In connection with the Settlement, the Company has agreed to implement the

Reforms as soon as practically possible following final court approval of the Settlement, and to maintain the Reforms for a minimum of five years (the "Compliance Term"). Defendants acknowledge that the commencement, litigation, and settlement of the consolidated action was the primary cause of the Company's decision to implement and maintain the Reforms.  Moreover, the Reforms confer substantial benefits on the Company and its stockholders.

      **A.**     **Management Disclosure Committee**

     1.     Vanda shall create and adopt a charter governing a Disclosure Committee comprised of members of Vanda's management. This charter, which shall be distributed to Vanda's Board of Directors, shall:

     a.     Set forth the membership of the Disclosure Committee, which shall include Vanda's Chief Executive Officer, Chief Financial Officer, General Counsel, Senior Vice President of Business Development, and Chief Corporate Affairs and Communications Officer (or, in the event of changes in the structure or responsibilities of the management team, similarly senior executives with responsibilities for these areas);

     b.     Require the Disclosure Committee to meet on a quarterly basis to discuss earnings releases and quarterly/annual SEC filings, with considerations of any disclosure-related issues concerning the following subjects:

     i.     any pending transactions due on Vanda's licensing agreements or other major contracts that could affect the terms and conditions of such agreements and contracts;

     ii.     any potentially fraudulent activities at Vanda;

     iii.     any material commitments and contingencies;

     iv.     any related-party transactions;

   v.  any material issues relating to Vanda's accounting matters and financial statements; and

   vi.  any tips reported through Vanda's whistleblower hotline, Vanda's website (http://www.vandapharma.ethicspoint.com/ or other URL), or Vanda's Compliance Officer, Chairman of the Board, or Chair of the Audit Committee.

  c.  Require the Disclosure Committee Members to attend each quarterly meeting, with allowance for one-on-one meetings with the General Counsel for any member who is unable to participate in any given meeting;

  d.  Define what materials will be available to the Disclosure Committee Members in advance of the committee's quarterly meeting; and

  e.  Require that the Disclosure Committee provide minutes of its quarterly meetings to the Audit Committee of Vanda's Board of Directors and make available to the Audit Committee any materials distributed in connection with the Disclosure Committee's quarterly meetings.

2.  Disclosure Committee Members shall receive annual training in the following subjects, selected annually at the discretion of the General Counsel:

  a.  Generally Accepted Accounting Principles;

  b.  SEC financial reporting; and

  c.  Corporate governance and disclosure best practices.

**B. Annual Policy Review**

1.  On an annual basis, Vanda's General Counsel and Head of Compliance shall together undertake a comprehensive review of Vanda's policies to ensure that such policies are:

  a.  Consistent with current laws and regulations; and

      b.      Appropriate in scope with respect to Vanda's operations and risks.

2.     The Annual Policy Review shall include a review of all of Vanda's policies, including but not limited to those on the following topics:

      a.      healthcare compliance;

      b.      compliance with Medicare/Medicaid regulations;

      c.      compliance with US and ex-US drug marketing rules, including restrictions on "off-label" and other marketing activities, including: (i) unapproved uses, (ii) making appropriate safety claims, and (iii) making appropriate superiority or efficacy claims;

      d.      anti-bribery compliance;

      e.      clinical/regulatory matters;

      f.      human resources;

      g.      global data privacy;

      h.      good manufacturing practices;

      i.      corporate governance;

      j.      insider trading and securities trading;

      k.      conflicts of interest;

      l.      financial controls and reporting;

      m.     state law reporting;

      n.      prepared remarks or materials distributed in connection with Vanda's quarterly earnings releases;

      o.      whistleblower any other internal reporting; and

      p.      competition and fair dealing.

3.      On an as-needed basis, the General Counsel may engage, and the General Counsel and Head of Compliance may rely upon, outside counsel to conduct or assist with the Annual Policy Review.

4.      Any proposed changes to Vanda's policies resulting from the Annual Policy Review shall be presented to and discussed with Vanda's Compliance Committee prior to adoption by Vanda.

5.      On an annual basis, the General Counsel shall report to the Board of Directors on the results of the Annual Policy Review, including any policy changes resulting from the Annual Policy Review.

6.      Following the Annual Policy Review, Vanda will notify employees as necessary of any changes to Vanda's policies, will make revised policies accessible to employees, and, if necessary, retrain employees on policy changes.

7.      In addition to the Annual Policy Review, Vanda's General Counsel and Head of Compliance shall also meet and discuss with the Compliance Committee on an as needed basis if they discover any significant deficiencies in Vanda's existing policies. Any such resulting mid-year-proposed policy changes shall be disclosed to the Board of Directors at its next meeting.

## IV.     ARGUMENT

### A.      The Settlement Warrants Preliminary Approval

#### 1.      Standards for Preliminary Approval

It is well-settled that strong public policies favor the settlement of disputed claims, especially in complex class and shareholder derivative litigation. *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1977) (settlements of shareholder derivative actions particularly favored because such litigation is "notoriously difficult and unpredictable") (citation omitted); *Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977) (same).

Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). "The role of the court and the criteria considered in evaluating the adequacy and fairness of a derivative settlement are substantially the same as in a class action." Alba Conte & Herbert Newberg, *Newberg on Class Actions* §22.110 at 476 (4th ed. 2002).

The procedure for the Court's review of a derivative settlement is well-established. Preliminary approval is the first of two stages that comprise the approval procedure. The Court first reviews the proposal preliminarily to determine whether it is sufficient to warrant notice to shareholders and a hearing. If so, the Court would then consider final approval of the settlement at a settlement hearing, after notice of settlement is provided to shareholders. *Manual for Complex Litigation* §13.14 at 173 (4th ed. 2004). Preliminary approval does not require the Court to answer the ultimate question of whether the proposed settlement is fair, reasonable, and adequate. *Id.* Rather, that determination is made only after notice of the settlement has been given to shareholders and after they have been given the opportunity to comment. 5 James Wm. Moore, *Moore's Federal Practice* 23.83[1] at 23-336.2 to 23-339 (3d ed. 2002).

The standards for preliminary approval are "not as stringent as those" for final approval. *Manual for Complex Litigation* §21.632 (4th ed. 2004). To grant preliminary approval, the Court need only make a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement. *In re Prudential Sec. Inc. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995). The sole issue before the Court is whether the Settlement falls within the range of what could be found to be fair, adequate, and reasonable, such that it would be appropriate to give notice to the

shareholders and schedule a hearing to consider final approval of the Settlement. *In re Currency Conversion Fee Antitrust Litig.*, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006) (court to conduct "a preliminary evaluation as to whether the settlement is fair, reasonable and adequate") (citation omitted); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (preliminary approval requires only a "preliminary evaluation of the fairness of the settlement, prior to notice"). The substantive determination regarding whether a proposed settlement is fair, adequate, and reasonable is to be made after notice of the settlement has been given to shareholders and after they have been given an opportunity to voice their views regarding the settlement. *Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974).

Preliminary approval should generally be granted where, as here, the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; has no obvious substantive deficiencies; and falls within the range of possible approval in light of the benefits guaranteed by the settlement and the risks, cost and delays entailed in attempting to secure a better result through continued litigation. *See NASDAQ*, 176 F.R.D. at 102 (citing *Manual for Complex Litigation*, Third, § 30.41); *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 741 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) (preliminary fairness evaluation should balance possible "'rewards of litigation' with its 'risk and cost'" against benefits guaranteed through proposed settlement) (citations omitted).

### 2. The Settlement Is Presumptively Fair Because It Resulted from Arm's-Length Negotiations by Experienced and Well-Informed Counsel

In determining whether a settlement is fair, courts focus on whether the settlement was reached as a result of good faith bargaining at arm's-length without collusion. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982). Here, the Settlement was negotiated between and among experienced and sophisticated counsel and provides substantial benefits to the Company while

eliminating the expense, risk, and delay inherent in such complex litigation, including the very real risk of no recovery. As the court observed in *City of Providence v. Aéropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. Appx. 73 (2d Cir. 2015), an "initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations…." *Id.* at *11-12; *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) ("a strong presumption of fairness" attaches to settlements negotiated at arm's-length by experienced counsel).

Significant weight also should be attributed to the belief of experienced counsel that settlement is in the best interest of those affected by the settlement. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("'[G]reat weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.'"); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000) (settlement enjoys presumption of fairness where it is the product of arm's-length negotiations conducted by experienced and knowledgeable counsel); *In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 294 (S.D.N.Y. 1996) (same); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 369 (S.D.N.Y. 2005) (same). "'Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Clark v. Ecolab Inc.*, 2010 U.S. Dist. LEXIS 47036, at *17-18 (S.D.N.Y. May 11, 2010) (alterations in original); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) (same). Levi & Korsinsky, LLP and Bragar Eagel & Squire, P.C. have extensive experience in shareholder derivative litigation. *See* Nespole Decl. Exs. 2 and 3. Plaintiffs' Counsel thus have unique insight into the legal and factual issues presented in the Derivative Action. *In re NeuStar, Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 165320,

at *11 (E.D. Va. Dec. 8, 2015) (where, as here, plaintiffs' counsel are '"nationally recognized members of the securities litigation bar,'" the Court "may pay heed to [Plaintiffs'] Counsel's judgment in approving, negotiating, and entering into a putative settlement") (citation omitted). Defendants were vigorously represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP—highly experienced practitioners from a preeminent corporate defense firm.

In addition, Plaintiffs and their counsel acted on an informed basis in negotiating the Settlement. "[T]he question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate it." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620-21 (E.D. La. 2006); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement"). Here, Plaintiffs, by and through Plaintiffs' Counsel, thoroughly considered the facts and law underlying the Litigation and have conducted an extensive investigation relating to the claims and the underlying events alleged in the Derivative Action, including: (i) reviewing Vanda's press releases, public statements, SEC filings, and securities analysts' reports and advisories about the Company; (ii) reviewing related media reports about the Company; (iii) researching applicable law with respect to the claims alleged in the Derivative Action and potential defenses thereto; (iv) preparing and filing derivative complaint(s); (v) conducting extensive damages analyses; (vi) researching Vanda's existing and historical corporate governance practices and processes, corporate governance processes at Vanda's peer companies, and industry-wide best practices; (vii) preparing a detailed settlement

demand that helped set the framework for settlement negotiations and ultimately the Settlement; (viii) evaluating the merits of the securities class action filed in this Court and arising out of the same facts as the Derivative Action; (ix) evaluating the merits of a *qui tam* action filed by a relator, Richard Gardner and arising out of many of the same facts as the Derivative Action; (x) negotiating this Settlement, including researching corporate governance best practices and negotiating the Reforms.

Plaintiffs believe that the claims asserted in the Derivative Action have merit, but they also recognize and acknowledge the significant risk, expense, and length of continued proceedings necessary to prosecute the Derivative Action through trial and appeal. Plaintiffs and Plaintiffs' Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex cases such as the Derivative Action, as well as the difficulties and delays inherent in such litigation. After weighing the risks of continued litigation, Plaintiffs and Plaintiffs' Counsel determined that it is in the best interests of Vanda and its shareholders that this action be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation, and that those terms and conditions are fair, reasonable, adequate, and confer substantial benefits upon Vanda and its shareholders.

As described herein and in Section IV of the Stipulation, Plaintiffs, by and through Plaintiffs' Counsel, and the Defendants, by and through their counsel, and exercising their business judgment and mindful of their duties to shareholders, have independently considered the Settlement and all agree that it is in the best interest of Vanda and its shareholders. This weighs in favor of settlement approval.

### 3.   The Settlement Confers Valuable Benefits upon Vanda and Is Well Within the Range of Possible Final Approval

"[S]trong corporate governance is fundamental to the economic well-being and success of a corporation;" accordingly, courts have long "recognized that corporate governance reforms such as those achieved here provide valuable benefits for public companies." *In re NVIDIA Corp. Derivative Litig*, 2009 U.S. Dist. LEXIS 24973, at *11-12 (N.D. Cal. Mar. 18, 2009); *see also Mills v. Elec. Auto-Lite Co*., 396 U.S. 375, 395 (1970) ("[A] corporation may receive a 'substantial benefit' from a derivative suit ... regardless of whether the benefit is pecuniary in nature."); *Maher v. Zapata Corp*., 714 F.2d 436, 461 (5th Cir. 1983) ("[T]he effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor.").

Courts approve settlements supported by consideration in the form of corporate governance reforms "specifically designed to minimize the probability of violations of fiduciary duties and federal securities laws[.]" *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005). Among other benefits, such reforms make it "far less likely [that the corporation will] become subject to long and costly securities litigation in the future, as well as prosecution or investigation by regulators or prosecutors." *Id*.; *see also In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 342 (S.D.N.Y. April 29, 2011) (approving settlement of shareholder derivative action where the corporate benefits included "a significantly improved institutional structure for detecting and rectifying the types of wrongdoing that have, in recent years, caused extensive harm to the company"); *Unite Nat'l Ret. Fund v. Watts*, 2005 U.S. Dist. LEXIS 26246, at *9 (D.N.J. Oct. 28, 2005) (non-monetary benefits support settlement where "the relief is intended to prevent future harm"). The Reforms guaranteed by the Settlement confer this sort of substantial benefit here.

Vanda and the Individual Defendants acknowledge that the commencement, litigation, and settlement of the Derivative Action was the cause of the Company's decision to implement and maintain the Reforms, which will help to ensure (among other things) enhanced internal controls; timely and accurate public disclosures by the Company, including through the formation of a management level Disclosure Committee and the adoption of a Disclosure Committee Charter laying out the duties and responsibilities of the Company's Disclosure Committee; and a regularly scheduled review of all the areas which lead to the Derivative Action which will lead to improved policies and procedures relating to all of Vanda's most important processes and improved transparency. Taken together, these Reforms will strengthen the Company's legal and regulatory compliance, reduce the Company's exposure to violations and the substantial penalties that result therefrom, and make Vanda a better-run Company overall moving forward. The Settlement is an outstanding resolution for Vanda and it positions the Company to reap the long-term benefits of strong corporate governance. Moreover, Vanda has agreed to maintain all of these governance measures for a minimum of five (5) years – a meaningful amount of time intended to ensure the Reforms become embedded in the Company's policies, practices, and corporate culture, thus protecting against discontinuation of these Reforms following the five-year period. Stipulation § VI; *see also, e.g.*, *Cohn*, 375 F. Supp. 2d 844, 850 (finding that corporate governance measures which must be in place for no less than three years will "provide meaningful ways of avoiding the problems [the company] experienced in the recent past").

An evaluation of the benefits of settlement must be tempered by recognition that any compromise involves concessions by all settling parties. Indeed, "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972). Here, the Settlement provides substantial benefits to Vanda and its

shareholders while eliminating numerous risks, costs, and burdens of litigation for all concerned, including the Company. Balanced against the delays, costs, and particularly the risks of attempting to secure additional benefits through further litigation and trial, the substantial benefits of the Settlement clearly fall within the range of possible approval as fair, reasonable, and adequate. *See Pfizer Inc.*, 780 F. Supp. 2d at 340 (citation omitted).

While Plaintiffs believe that the claims alleged in the consolidated action are meritorious, continued litigation of the action would be complex, costly, and of substantial duration, and significant risks would remain. Plaintiffs would have to overcome these hurdles in the context of a shareholder derivative action, which is "notoriously difficult and unpredictable." *Maher*, 714 F.2d at 455. In fact, courts have recognized that a derivative failure of oversight claim "is possibly the most difficult theory in corporation law on which a plaintiff might hope to win a judgment." *In re Caremark International Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

Plaintiffs would have faced a motion to dismiss by Defendants challenging the sufficiency of the allegations, as well as whether Plaintiffs should have made a demand on the Board instead of moving right to a complaint—a daunting task for any shareholder derivative plaintiff. If that motion was defeated, litigation would be extremely complex, costly, and of substantial duration. Document discovery would need to be conducted, depositions would need to be taken, experts would need to be designated and expert discovery conducted. The Defendants' expected motions for summary judgment would have to be briefed and argued and a trial would have to be held. Even if liability was established, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. *See In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, at *61 (S.D.N.Y. Nov. 26, 2002) ("The determination

of damages... is a complicated and uncertain process, typically involving conflicting expert opinions. The reaction of a jury to such complex expert testimony is highly unpredictable.").

Moreover, a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal or by the trial court. *See, e.g.*, *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial). Add to these post-trial and appellate risks, the difficulty and unpredictability of a lengthy and complex trial—where witnesses could suddenly become unavailable or the fact finder could react to the evidence in unforeseen ways— and the benefits of the Settlement become all the more apparent. *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 24 (2d Cir. 1987) (affirming settlement where potential defenses presented the "possibility of 'a lesser or no recovery after trial'") (citations omitted). The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several more years of litigation, while providing the Company and its shareholders substantial benefits. *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *17 (S.D.N.Y. May 1, 2008).

### B.    The Notice Satisfies Rule 23.1(c) and Due Process

Fed. R. Civ. P. 23.1(c) requires that the notice of a proposed shareholder derivative settlement be given to shareholders "in the manner that court orders." Notice in a derivative action must meet the due process requirement of being "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the [settlement] and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the Stipulation and proposed Preliminary Approval Order provide that within ten (10) business days after the date of an order preliminarily approving the Settlement, Notice will be completed by (i) the issuance of a press release by Plaintiffs' Counsel, which shall be published on a wire service; (ii) posting of the Notice and Stipulation on Plaintiffs' Counsel's website; and

(iii) an update to Vanda's litigation disclosure in its quarterly filing with the SEC on Form 10-Q advising of the status of the Settlement.[4]

The proposed method of notice to shareholders here satisfies Rule 23.1 and due process standards in derivative actions brought by shareholders on behalf of public corporations. *See Arace v. Thompson*, 2011 U.S. Dist. LEXIS 93105, at *11-12 (S.D.N.Y. Aug. 17, 2011) ("[T]he publication of the notice in the September 25, 2009 edition of the *Investor's Business Daily*—'a nationally-circulated business-oriented publication catering to investors'—sufficiently apprised Wachovia shareholders of the nature of the proposed settlement, the upcoming public hearing on the matter, and the opportunity to object.") (citing *Marsden v. Select Med. Corp.*, 2005 U.S. Dist. LEXIS 714 (E.D. Pa. Jan. 18, 2005); *see also Metro. Life*, 935 F. Supp. at 294 n.10 (approving published notice of derivative settlement). Personal notice is unnecessary because, unlike a shareholder class action, the settlement of a shareholder derivative action resolves claims belonging to, and secures a recovery for, the corporation, not individual class members.

Additionally, the Notice, which is attached as Exhibit 1 to the Preliminary Approval Order, is drafted in plain and easily understood language and clearly describes: the nature of the Litigation and the claims alleged therein; the terms of the proposed Settlement (including the attorneys' fees and expenses to be paid to Plaintiffs' Counsel, and the service awards to be paid to Plaintiffs therefrom, subject to Court approval); the considerations that caused the Settling Parties to conclude that the Settlement is fair, reasonable, adequate, and in Vanda's best interests; the procedures for objecting to the Settlement; and the date, time, and place of the Settlement Hearing. In addition, the Notice invites current Vanda shareholders who seek additional information not

---

[4] Plaintiffs' Counsel and Counsel for Vanda, at least seven (7) business days before the Settlement Hearing, shall file with the Court an appropriate proof of Notice and compliance with the other Notice procedures set forth in the Preliminary Approval Order.

only to inspect the Stipulation and other documents filed with the Court, but also to contact the Settling Parties' counsel.

The Notice is reasonably "calculated to apprise the parties of the terms of the proposed settlement and the options available in connection with the judicial proceeding." *In re Drexel Burnham Lambert Group*, 995 F. 2d 1138, 1144 (2d Cir. 1993). The Court, therefore, should approve the proposed method and form of Notice to Current Vanda shareholders.

## V.     PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the proposed Settlement, Plaintiffs respectfully request that the Court establish: (i) dates by which notice of the Settlement will be distributed to Vanda shareholders; (ii) the date by which Vanda shareholders may comment on the Settlement; and (iii) the date of a Settlement Hearing, at which the Court will consider whether final approval of the proposed Settlement should be granted. As set forth in the Preliminary Approval Order, Plaintiffs propose the following schedule:

| | |
|---|---|
| Publication of Notice | 10 business days after the Court enters the Preliminary Approval Order |
| Filing of Motion for Final Approval of Derivative Settlement | 28 calendar days before Settlement Hearing |
| Last day for Vanda shareholders to comment on the proposed Settlement | 14 calendar days before Settlement Hearing |
| Counsel to file affidavit or declaration regarding publication and posting of Notice | 7 business days before Settlement Hearing |
| Filing of reply in support of Final Approval of Derivative Settlement | 7 calendar days before Settlement Hearing |
| Settlement Hearing Date | At least fifty (50) calendar days after entry of the Preliminary Approval Order |

## VI.    CONCLUSION

Given the substantial benefits the Settlement provides to Vanda and current Vanda Shareholders, Plaintiffs respectfully request that the Court enter the proposed Preliminarily Approval Order, attached as Exhibit B to the Stipulation, which: (i) preliminarily approves the proposed Settlement; (ii) approves the form and manner of publication and posting of the proposed Notice and Summary Notice; and (iii) schedules the Settlement Hearing.

Dated: July 19, 2021

**LEVI & KORSINSKY, LLP**

*/s Gregory Mark Nespole*
Gregory Mark Nespole
Daniel Tepper
55 Broadway, 10th Floor
New York, New York 10006
Tel: (212) 363-7500
gnespole@zlk.com
dtepper@zlk.com

*Co-Lead Counsel to Plaintiffs*

**BRAGAR EAGEL & SQUIRE, P.C.**
W. Scott Holleman
Lawrence P. Eagel
Garam Choe
810 Seventh Avenue, Suite 620,
New York, New York 10019
Tel: (212) 355-4648
holleman@bespc.com
eagel@bespc.com
choe@bespc.com

*Co-Lead Counsel to Plaintiffs*

**HYNES & HERNANDEZ, LLC**
Michael J. Hynes
Ligaya T. Hernandez
101 Lindenwood Drive, Suite 225
Malvern, Pennsylvania 19355
Telephone: (484) 875-3116

*Additional Counsel for Plaintiff Bavaro*